FILED
FEB 0 8 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY             DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT MANIKAN,<br><br>          Plaintiff,<br><br>v.<br><br>PACIFIC RIDGE NEIGHBORHOOD HOMEOWNERS ASSOCIATION; N.N. JAESCHKE, INC.; PETERS & FREEDMAN, L.L.P.; and ADVANCED ATTORNEY SERVICES, INC.,<br><br>          Defendants. | Case No.: 17cv467-BEN(JLB)<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT FILED JOINTLY BY PLAINTIFF AND DEFENDANT ADVANCED ATTORNEY SERVICES, INC. ("AASI")**<br><br>[Doc. No. 80.] |

Before the Court is a Motion for Determination of Good Faith Settlement filed by plaintiff Vincent Manikan and defendant Advanced Attorney Services, Inc. [Doc. No. 80.] At the request of Magistrate Judge Jill L. Burkhardt, this Motion was randomly assigned to the undersigned Magistrate Judge for consideration. Also before the Court is an Opposition to the Motion for Determination of Good Faith Settlement by defendant Peters & Freedman, L.L.P. [Doc. No. 96.] In addition, plaintiff and defendant Advanced Attorney Services, Inc. each filed a Reply to the Opposition. [Doc. Nos. 97, 98.]

1

In the Motion, plaintiff and defendant Advanced Attorney Services, Inc. ("AASI") represent that their settlement is conditioned on a finding of "good faith" by this Court, because it would bar any claims for equitable indemnity or contribution by the other defendants against AASI. [Doc. No. 80-1, at p. 2.] Therefore, by way of their Motion, plaintiff and AASI seek a determination by this Court that the settlement was made in "good faith;" that "any claims, filed and unfiled, against [AASI] for indemnity, contribution or comparative fault [are] dismissed and barred with prejudice;" and that "the non-settling parties" are entitled to an offset in the amount of the settlement. [Doc. No. 80-1, at p. 2.]

For the reasons outlined more fully below, it is RECOMMENDED that the District Court GRANT the Motion for Determination of Good Faith Settlement. The facts and circumstances presented indicate the settlement between plaintiff and defendant AASI was made in good faith, and defendant Peters & Freedman, L.L.C. did not meet its burden of establishing that the amount of the settlement is grossly disproportionate to AASI's potential liability in the case.

## *Background*

The First Amended Complaint names the following defendants who are alleged to be collectors of "consumer debts": (1) Pacific Ridge Neighborhood Homeowners Association, a homeowner's association ("Pacific Ridge"); (2) N.N. Jaeschke, Inc., a property manager ("Jaeschke"); (3) Peters & Freedman, L.L.P., a law partnership engaged in the practice of law and the collection of debts ("Peters & Freedman"); and (4) Advanced Attorney Services, Inc., a registered process server and an attorney support services corporation ("AASI"). [Doc. No. 22, at pp. 3-5.]

According to the First Amended Complaint, plaintiff owns real property that is subject to association dues payable to Pacific Ridge. [Doc. No. 22, at pp. 5-6.] As part of a plan in a Chapter 13 bankruptcy proceeding, plaintiff paid all amounts owed in arrears to Pacific Ridge and obtained a receipt from Jaeschke indicating his account was

"paid in full." [Doc. No. 22, at p. 6.] The receipt from Jaeschke also states: "Please do not send additional payments." [Doc. No. 22, at pp. 6-8.] Thereafter, the Bankruptcy Court filed a Notice of Final Cure Payment and Completion of Payments Under the Plan that was served on Jaeschke. [Doc. No. 22, at pp. 7-8.] Plaintiff also made all "post-bankruptcy payments due and owing to Pacific Ridge." [Doc. No. 22, at p. 8.] Later, in August or September of 2016, Pacific Ridge incorrectly determined that plaintiff was in default on his homeowner's dues in the amount of $2,597.04, and referred his account to Jaeschke and Peters & Freedman to collect on the debt, "including pursuit of a nonjudicial foreclosure action." [Doc. No. 22, at p. 8.]

On behalf of Pacific Ridge and Jaeschke, Peters & Freedman initiated a nonjudicial foreclosure of plaintiff's residence because of the alleged arrears in the amount of $2,597.04. [Doc. No. 22, at p. 8.] On behalf of Pacific Ridge, Peters & Freedman and Jaeschke then retained and instructed AASI to personally serve plaintiff with a Notice of Default even though he had no outstanding default or arrears. [Doc. No. 22, at pp. 8-9.]

On September 2, 2016, an individual known as Dakotah Douglas, who was allegedly employed by AASI, went to plaintiff's home and allegedly entered plaintiff's backyard by pushing through a closed gate on the side of the home. Plaintiff claims that Mr. Douglas caused $1,218 worth of damage to the gate. [Doc. No. 22, at p. 9.] Mr. Douglas then entered plaintiff's backyard and "began forcefully banging on the plaintiff's kitchen window." [Doc. No. 22, at p. 9.] Plaintiff and his cousin, who were both inside at the time, believed Mr. Douglas was trying to break into the home to harm them so police were called. [Doc. No. 22, at pp. 9-10.]

When he heard police approaching, it is alleged that Mr. Douglas quickly moved to the front yard and was at the front door when plaintiff opened it for police. At that point, Mr. Douglas allegedly explained to police that he had been hired to serve plaintiff with a Notice of Default. [Doc. No. 22, at p. 10.] Plaintiff reported to police that Mr. Douglas entered the property without consent and "terrorized" him and his family members. [Doc. No. 22, at p. 10.] At this time, Mr. Douglas served plaintiff with a Notice of

Default from Pacific Ridge that was recorded several years earlier on April 9, 2012 and cited a balance that was owed on that date. [Doc. No. 22, at p. 10.]

Knowing there was no outstanding amount due to Pacific Ridge, plaintiff was confused and concerned. He claims he experienced panic, anxiety, fear, sleeplessness, hopelessness, and despair, particularly because the Notice indicated Pacific Ridge intended to foreclose on his home. [Doc. No. 22, at p. 11.] On September 6, 2016, plaintiff called Peters & Freedman to explain that he repaid all arrears, but a representative named Marcella said her records indicated he still owed $2,597.04 and that the Notice was properly served on him to collect the balance. [Doc. No. 22, at pp. 11-12.] "Plaintiff believed he was facing imminent foreclosure and did not have the funds on hand to cure the alleged arrears. . . ." [Doc. No. 22, at p. 12.] Thereafter, plaintiff sought and received medical treatment for high blood pressure, anxiety, depression, sleeplessness, and headaches. [Doc. No. 22, at p. 12.]

The First Amended Complaint includes three causes of action. The first cause of action is alleged against Peters & Freedman and AASI for violations of the Fair Debt Collection Practices Act ("the FDCPA"). [Doc. No. 22, at pp. 12-15.] The second cause of action is alleged against defendants Pacific Ridge, Jaeschke, and AASI for violations of California's Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act"). Peters & Friedman is not named in this cause of action.[1] [Doc. No. 22, at pp. 15-17]. The third cause of action alleges trespass under California law against defendant AASI only. [Doc. No. 22, at pp. 17-18.] Referring to plaintiff's initial disclosures, plaintiff and AASI represent that plaintiff seeks to recover the following categories of damages: (1) emotional distress; (2) economic; (3) attorney's fees and costs; (4) monetary damages for the repair of plaintiff's property; and (5) statutory. [Doc. No. 80-1, at p. 6.]

///

---

[1] Presumably this is because California Civil Code Section 1788.2(c) excludes attorneys from the definition of "debt collector." Cal.Civ.Code 7888.2(c).

4

17cv467-BEN(JLB)

## *Procedural History*

Plaintiff originally filed his action in state court, but the original Complaint was removed to this Court on March 7, 2017. [Doc. No. 1.] Following removal, defendants filed Motions to Dismiss [Doc. Nos. 3, 4, 26], which were denied on July 25, 2017 and March 29, 2018 [Doc. Nos. 23, 57]. Plaintiff filed his First Amended Complaint on July 24, 2017. [Doc. No. 22.]

On October 3, 2017, an Early Neutral Evaluation Conference was held but the case did not settle. [Doc. No. 38.] A Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings was entered on October 4, 2017 imposing a fact discovery deadline of March 2, 2018 and an expert discovery deadline of June 29, 2018. [Doc. No. 39, at pp. 1-3.]

On April 2, 2018, shortly after the close of fact discovery, AASI filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. [Doc. No. 58.] In this Motion, defendant AASI argues that it is entitled to summary judgment or partial summary judgment on several grounds. First, there is an absence of evidence to establish that AASI can be held liable under the FDCPA or the Rosenthal Act, because it does meet the definition of "debt collector" under either of these laws. [Doc. No. 58-1, at pp. 6-10.] Second, AASI argues that it is exempt from liability for trespass, because it is a registered process server. [Doc. No 58-1, at p. 16.] Third, AASI argues it cannot be held vicariously liable for any wrongful acts by Mr. Douglas, because he is an independent contractor and any wrongful conduct occurred outside the scope of his agency with AASI. [Doc. No. 58-1, at pp. 17-18.] Both plaintiff and defendant Peters & Freedman have opposed the Motion. [Doc. Nos. 60, 61.] The District Court has not ruled on this Motion.

On May 2, 2018, after AASI filed its Motion for Summary Judgment, Magistrate Judge Jill L. Burkhardt held a Mandatory Settlement Conference. Plaintiff reached a settlement with AASI at this time, but the remainder of the case did not settle. [Doc. No. 75.] Thereafter, on June 11, 2018, plaintiff and AASI filed their Joint Motion for

5

Determination of Good Faith Settlement. [Doc. No. 80.] On July 18, 2018, at Judge Burkhardt's request, the undersigned Magistrate Judge was assigned to consider the Joint Motion for Determination of Good Faith Settlement. [Doc. No. 91.] As noted above, defendant Peters & Freedman filled an Opposition to this Motion on September 20, 2018. [Doc. No. 96.] Thereafter, plaintiff and AASI each filed a filed a Reply to Peters & Freedman's Opposition. [Doc. Nos. 97, 98].

On June 25, 2018, while the Motion for Determination of Good Faith Settlement was pending, plaintiff filed a Motion for Partial Summary Judgment against defendant Peters & Freedman. [Doc. No. 81-1, at p. 1.] In this Motion, it is argued that summary adjudication should be granted in plaintiff's favor on the FDCPA cause of action against Peters & Freedman, because there are no disputed issues of fact and because Peters & Freedman has no affirmative defense. [Doc. No. 81-1, at pp. 1-24.] The District Court has not ruled on this Motion.

On June 25, 2018, defendant Peters & Freedman also filed a Motion for Summary Judgment, or in the Alternative, Summary Adjudication. In this Motion, Peters & Freedman argues that plaintiff's claims are barred because his remedy rests exclusively with the Bankruptcy Court. [Doc. No. 83-1, at pp. 1-21.] According to Peters & Freedman, plaintiff's claims "are nothing more than allegations that [Peters & Freedman] violated the [Bankruptcy Court's] discharge injunction," so judgment should be granted in its favor as a matter of law. [Doc. No. 83-1, at p. 21.]

On August 14, 2018, plaintiff, Pacific Ridge, and Jaeschke filed a Joint Motion indicating they had reached a settlement. As a result, they jointly moved to dismiss the claims against these defendants. [Doc. No. 93, at pp. 1-2.] On August 17, 2018, the District Court entered an Order Granting the Joint Motion for Dismissal. [Doc. No. 94.] As a result, AASI and Peters & Freedman are the only remaining defendants that have not yet been dismissed from the case.

///

///

## Discussion

### A. Application of Federal vs. State Settlement Law.

In its Opposition to the Motion for Good Faith Settlement, defendant Peters & Freedman argues that California's good faith settlement law (*i.e.*, California Code of Civil Procedure sections 877 and 877.6) does not apply to plaintiff's FDCPA cause of action against Peters & Freedman and AASI. According to defendant Peters & Freedman, Federal common law applies, because the Court's jurisdiction is based on plaintiff's inclusion of federal claims under the FDCPA. [Doc. No. 96, at pp. 4, 8-9, referring to Doc. No. 1, at p. 2 (Notice of Removal).] As the Motion for Good Faith Settlement does not mention Federal common law, defendant Peters & Freedman argues that "the moving parties have waived their right for a good faith settlement determination as to plaintiff's FDCPA claim." [Doc. No. 96, at p. 9.]

As defendant Peters & Freedman contends, this case was removed from state court because it involves a federal question under the FDCPA (28 U.S.C. § 1331; 15 U.S.C. §§ 1692 *et seq.*) and because this Court has "supplemental jurisdiction over plaintiff's state law claims" (28 U.S.C. § 1367(a)). [Doc. No. 1, at pp. 2-4.] "When a district court sits in diversity <u>or</u> hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) (emphasis added). "California Code of Civil Procedure section 877 constitutes substantive law." *Id.* Unless there is some federal policy or interest that conflicts with the application of state law, Federal Courts in California considering cases involving pendant state law claims have applied the substantive part of California's settlement law in sections 877 and 877.6 to determine whether a partial settlement is in good faith. *See, e.g., Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d at 506-511; *Mason & Dixon v. Lapmaster*, 632 F.3d at 1060-1064. Peters & Freedman has not presented any viable reason, such as a conflict between state and Federal interests or the preemption of state settlement law by some Federal law, which would require this Court to apply Federal common law to the partial settlement of

7

this case between plaintiff and AASI. *Id. See also White v. Sabitino*, 526 F.Supp.2d 1135 (D. Hawaii 2007); *Slaven v. BP America, Inc.*, 958 F.Supp. 1472, 1478-1485 (C.D. Cal. 1997). Accordingly, the Court will consider whether the settlement between plaintiff and AASI meets California's "good faith" settlement standard.

### B. *California's Good Faith Settlement Standard.*

California Code of Civil Procedure section 877 provides in part as follows: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or covenant, or in the amount of the consideration paid for it, whichever is the greater. (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ." Cal. Civ. Code Proc. § 877.

California Code of Civil Procedure section 877.6 "is essentially a procedural statute" and the procedures set forth in section 877.6 "do not govern a federal action." *Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990). On the other hand, Federal Courts generally apply section 877.6 to the extent its provisions are "bound up" with the definitions of the parties' rights and obligations under state law. *Slaven v. BP*, 958 F.Supp. at 1478, citing *Byrd v. Blue Ridge Rural Electric Cooperative*, Inc. 356 U.S. 525, 537-537 (1958).

Section 877.6 states in part as follows: "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors. . . . (b) The issue of the good faith of a settlement may be determined by the court on the basis of the affidavits , . . . or the court may, in its discretion, receive other evidence at

8

the hearing. (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. (d) The party asserting the lack of good faith shall have the burden of proof on that issue. . . ." Cal. Code Civ. Proc. § 877.6(a)(1), (b), (c), (d).

In *Tech–Bilt, Inc. v. Woodward–Clyde & Associates*, 38 Cal.3d 488, 499 (Cal. 1985), the California Supreme Court stated that an appropriate definition of "good faith" "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Id.* at 499. On the other hand, bad faith is not necessarily "established by a showing that a settling defendant paid less than his theoretical proportionate or fair share." *Id.* (citation omitted). "Such a rule would unduly discourage settlements" as it would not take into account various unknown and speculative factors such as the amount of damages, probability of legal liability, the solvency of the defendant, and the risk of going through trial. *Id.*

The California Supreme Court in *Tech-Bilt*, 38 Cal.3d 488, also held that the following factors should be considered in determining whether a settlement has been made in "good faith": (1) "a rough approximation of [the plaintiff's] total recovery and the settlor's proportionate liability;" (2) "the amount paid in settlement;" (3) "the allocation of settlement proceeds among plaintiffs;" (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial;" (5) "the financial conditions and insurance policy limits of settling defendants;" and (6) "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants." *Id.* at 499. In addition, the California Supreme Court in *Tech-Bilt* stated that an evaluation of "good faith" should "be made on the basis of information available at the time of settlement" and the settlement amount "must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would

9

estimate the settling defendant's liability to be." *Id.* (internal citations and quotations omitted).

In their Motion for Determination of Good Faith Settlement, plaintiff represents that during settlement negotiations he was "cognizant" of the strength of the arguments and claimed defenses in AASI's pending Motion for Summary Judgment. [Doc. No. 80-1, at pp. 6-7, referring to Doc. Nos. 58, 61, and 66.] In the pending Motion for Summary Judgment, AASI argues that it is not liable for damages under the FDCPA or the Rosenthal Act, because it does not qualify as a "debt collector" under these statutes.[2] In addition, AASI argues that it is not liable under the FDCPA, because the FDCPA's definition of "debt collector" specifically excludes "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C § 1692(6)(D). AASI also argues it cannot be held liable for trespass under California law, because California law exempts attorney services and registered process servers from liability for trespass; Mr. Douglas was an independent contractor; and AASI cannot be held vicariously liable for the bad acts of an independent contractor. [Doc. No. 58-1, at pp. 11-18.]

In support of the Motion for Summary Judgment, defendant AASI submitted a Declaration signed by its president explaining the services it offers to legal practitioners (*i.e.*, filing court documents; effecting service of process; preparing and copying

---

[2] The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). The Rosenthal Act defines "debt collector" as follows: "[A]ny person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law." Cal. Civ. Code § 1788.2(c). As noted above, Peters & Freedman is only named as a defendant in the FDCPA cause of action. [Doc. No. 22, at pp. 12-18.]

10

subpoenas; and delivering documents). The Declaration specifically states that AASI "does not provide any debt collection services, and has <u>never</u> been hired to collect or attempt to collect a debt." [Doc. No. 58-2, at p. 2 (emphasis in original).] The Declaration also describes AASI's relationship with non-settling defendant Peters & Freedman. According to the Declaration, AASI provides services to many law firms and its work for Peters & Freedman "accounted for less than one percent" of "total contracted process serving assignments in the year 2016." [Doc. No. 58-2, at p. 2.] In addition, the Declaration sets forth evidence indicating Dakotah Douglas, the individual who actually served plaintiff with the Notice of Default, was an "independent contractor" at the time in question. [Doc. No. 58-2, at pp. 2-3.] Attached to the Declaration is a copy of AASI's "independent contractor agreement" with Mr. Douglas. [Doc. No. 58-2, at pp. 2-3.]

In his Opposition to AASI's Motion for Summary Judgment, plaintiff did not present evidence to contradict the representations made in AASI's Declaration but did submit evidentiary objections and request additional time because of outstanding discovery. [Doc. No. 61-1, at pp. 4-5; Doc. No. 62, at pp. 1-11.] While plaintiff disputed the arguments raised by AASI in his Opposition to AASI's Motion for Summary Judgment, he also recognized there was a significant risk that AASI could prevail on one or more issues and/or causes of action. [Doc. No. 80-1, at pp. 6-7.] As noted above, AASI's Motion for Summary Judgment remains pending before the District Court.

In reaching its decision to settle with AASI for $8,000, it is significant that plaintiff had the benefit of AASI's Motion for Summary Judgment, along with its supporting evidence, and could more thoroughly evaluate its potential for success in opposing this Motion and/or for prevailing at trial. In reaching its decision to settle, plaintiff not only considered the strength of the defenses available to AASI on all causes of action, but also considered the possibility that it would be unable to recover statutory attorney's fees from AASI if AASI prevailed on the FDCPA and Rosenthal Act claims. In addition, plaintiff faced the possibility of paying statutory attorney's fees to AASI if AASI prevailed on these causes of action. [Doc. No. 80-1, at pp. 7-8; Doc. No. 97, at p. 7.] Under the

11

circumstances, plaintiff reasonably concluded that the risk of continuing the litigation against AASI was high, and, as a result, he was willing to settle with AASI for $8,000. [Doc. No. 97, at p. 8.]

Based on the record, the Court agrees with the settling parties that AASI's potential for liability to plaintiff is relatively low given AASI's strong defenses. The Court also agrees with the settling parties that the risk to plaintiff of continuing the litigation against AASI is relatively high. Thus, without more, the *Tech-Bilt* factors which require the Court to consider the amount paid in settlement and the proportionate share of the settlor's liability both weigh in favor of a finding that the settlement between plaintiff and AASI was made in good faith. To the extent the $8,000 settlement amount appears low, the Court also agrees with plaintiff and AASI that this amount is consistent with the *Tech-Bilt* factor which recognizes that a party should pay less in settlement than it would if it prevailed at trial. [Doc. No. 80-1, at pp. 7-8.]

The remaining factors in *Tech-Bilt* are not relevant to a determination of good faith in this case. All settlement proceeds will go to the plaintiff and will not be allocated among multiple plaintiffs. Based on the facts and circumstances presented, it does not appear that AASI's financial condition or insurance policy limits are relevant to a determination of good faith. Nor is there anything from which the Court could conclude the non-settling defendants will be prejudiced by the settlement because of collusion, fraud, or tortious conduct. The record indicates that plaintiff and AASI reached their settlement during arm's length negotiations at the Mandatory Settlement Conference.

### C. ***Objections to the Motion for Good Faith Settlement.***

Peters & Friedman is the only defendant who opposed the Motion for Good Faith Settlement. As noted above, the record indicates that all defendants except Peters & Freedman have reached a settlement with plaintiff. After plaintiff and AASI filed their Motion for Determination of Good Faith Settlement, defendants Pacific Ridge and Jaeschke reached a settlement with plaintiff and were dismissed from the case on August 17, 2018. [Doc. Nos. 93, 94.]

Under *Tech-Bilt* and section 877.6(d), Peters & Freedman, as the only remaining non-settling defendant, bears the burden of establishing that the amount of the settlement between plaintiff and AASI is "grossly disproportionate" to what a reasonable person would pay at the time of the settlement. *Tech-Bilt*, 38 Cal.3d at 499; Cal. Code Civ. Proc. 877.6(d). Peters & Freedman objects to the settlement between plaintiff and AASI on several grounds.

First, Peters & Freedman argues that the amount of the settlement is insufficient "[t]o the extent that plaintiff seeks to hold [Peters & Freedman] liable for the conduct of [its process server, AASI]." [Doc. No. 96, at p. 2.] Although the argument is somewhat unclear and undeveloped, it appears that Peters & Freedman is concerned that it may be found liable under the FDCPA, at least in part, for the actions of AASI based on a theory of vicarious liability but would then be unable to obtain any contribution from AASI if the Court concludes the settlement was made in good faith under section 877. [Doc. No. 96, at p. 2.] In this regard, Peters & Freedman states that it does not object to the $8,000 settlement "for damages purposes only" (*i.e.*, if it does not cover attorney's fees) as long as plaintiff agrees that this amount "satisfies all damages stemming from [AASI's] process server's conduct" and that the process server's conduct cannot be "attributable" to any of the defendants. [Doc. No. 96, at p. 11.]

The Ninth Circuit has acknowledged that general principals of agency and vicarious liability apply in FDCPA cases. In *Clark v. Capital Credit & Collection Services, Inc.*, 460, F.3d 1162 (9th Cir. 2006), the Ninth Circuit held that a debt collector could be held vicariously liable for the actions of another "[u]nder general principles of agency . . . ." if it exercises control "over the conduct or activities of the 'agent.'" *Id.* at 1173. In *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994), for example, the plaintiff alleged that Citicorp and an attorney retained by Citicorp to collect a debt violated a provision of the FDCPA which requires that any legal action to collect a debt must be filed in the judicial district where the consumer resides. *Id.* at 1510-1511. In a summary judgment motion, Citicorp argued that it could not be held vicariously liable for

13

a venue decision "made solely" by its attorney. *Id.* at 1516. The Ninth Circuit reversed summary judgment in favor of Citicorp on this issue, concluding that "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken." *Id.*

Conversely, in *Clark v. Capital Credit*, 460 F.3d 1162 (9th Cir. 2006), the Ninth Circuit held that summary judgment was appropriately granted in favor of an attorney who was retained by a debt collector to send a collection letter and take other legal actions against the debtor. *Id.* at 1167, 1173. According to the Ninth Circuit, the attorney could not be held vicariously liable for the actions of his client, because the debtors did not offer any evidence "upon which a reasonable trier of fact could conclude that [the attorney] exercised control over [the debt collector]." *Id.* at 1173.

In sum, the case law supports Peters & Freedman's fear that it could theoretically be held vicariously liable under the FDCPA for the actions of AASI related to the retention of Mr. Douglas and the service of the Notice of Default if the requisite degree of control could be established. It is also theoretically possible that AASI faces some potential for liability under the FDCPA for its own actions in connection with the service of the Notice of Default. However, simply identifying this potential for liability under the FDCPA does nothing to advance the burden of Peters & Freedman to show that the amount of the settlement between plaintiff and AASI is disproportionate or in any way prejudicial to the interests of Peters & Freedman.

As between Peters & Friedman and AASI, the relevance of a good faith settlement determination is also questionable. Peters & Friedman and AASI are the only defendants named in the FDCPA cause of action, and Peters & Freedman is not named in any other cause of action. By its very terms, section 877 is used to evaluate the good faith of a settlement when there are "a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights. . . ." Cal. Code Civ. P. § 877. If a settlement is made in "good faith," section 877 provides for a reduction of "the claims against the [non-settling tortfeasors] in the amount stipulated." Cal. Code Civ. P. § 877(a). Section 877 also provides for the "discharge" of any

14

contribution claims by the non-settling parties against a settling party as long as the settlement is in "good faith." Cal. Code Civ. P. § 877(b).

"Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law." *Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985). A number of Federal courts have already concluded there is no right of contribution or indemnity under the FDCPA. *See, e.g., Nelson v. Equifax Info. Servs., LLC*, 522 F.Supp.2d 1222, 1239 (C.D. Cal. 2007); *McSherry, Jr. v. Capital One FSB*, 236 F.R.D. 516, 520-523 (W.D. Wash. 2006); *Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 631-532 (D. Nev. 2002); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1057-1060 (N.D. Cal. 2000). The FDCPA is generally considered a strict liability statute. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d at 1177. Accordingly, it does not appear that Peters & Freedman would have any right to contribution under the FDCPA, regardless of whether the Court makes a finding that the settlement between plaintiff and AASI was made in good faith. *See, e.g., Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 632 (D. Nev. 2002) (denying good faith settlement motion because defendants were unable to show they had a right to set-offs or contribution under the FDCPA).

Second, Peters & Freedman objects to the amount of the settlement between plaintiff and AASI on the ground that it "does not come close to approaching the rough approximation of plaintiff's total potential recovery against AASI." [Doc. No. 96, at p. 3.] According to AASI, plaintiff is expected to seek recovery of "hundreds of thousands" of dollars in emotional distress damages. [Doc. No. 96, at p. 3.] According to Peters & Freedman, plaintiff's emotional trauma is the "critical component" of plaintiff's claimed damages and AASI "is the party most responsible for plaintiff's emotional trauma." [Doc. No. 96, at p. 7.] Peters & Freedman believes that a jury could conclude plaintiff's emotional distress damages are "significant" and could award damages "in an amount that is multiple magnitudes larger than $8,000." [Doc. No. 96, at p. 8.] Therefore, if AASI only pays $8,000, Peters & Freedman believes it may have to

15

pay a disproportionate share of plaintiff's emotional distress damages if the Court finds the settlement between plaintiff and AASI to be in good faith. [Doc. No. 96, at pp. 3-4.]

Without more, Peters & Freedman's argument appears to exaggerate the alleged role of AASI and Mr. Douglas in plaintiff's claimed emotional distress damages and to discount the role of the other defendants who were allegedly involved in the service of an erroneous notice of default on plaintiff at his home. As noted above, the First Amended Complaint alleges that Pacific Ridge incorrectly determined plaintiff was in default and referred the matter to Jaeschke and Peters & Freedman for collection, and that Peters & Freedman later retained and instructed AASI to serve plaintiff with the Notice of Default. [Doc. No. 22, at p. 8.]

AASI's Reply cites a report prepared by plaintiff's expert, Dominick Addario, M.D., which AASI represents was only available after plaintiff and AASI reached a settlement. Despite the argument of Peters & Freedman, the report indicates there were two distinct sources for plaintiff's emotional distress (*i.e.*, the notice of default which caused plaintiff to fear the loss of his home **over a period of months** until he was assured he was not in default **and** the alleged entry onto his property by Mr. Douglas). [Doc. No. 98, at p. 5 (emphasis added); Doc. No, 87-1, at p. 2; Doc. No. 87-1, at pp. 4-18.] In addition, AASI's Reply cites a report by Peters & Freedman's own expert indicating that a "significant" award for emotional distress damages is speculative at best. [Doc. No. 98, at p. 6.] Therefore, the Court cannot agree with the contentions of Peters & Freedman that AASI "is the party most responsible for plaintiff's emotional trauma" and that plaintiff's emotional distress damages could be "multiple magnitudes larger than $8,000." [Doc. No. 96, at p. 7-8.] In sum, AASI has not presented anything from which the Court could conclude the $8,000 settlement amount is "grossly disproportionate" to what a reasonable person would pay to settle the case. *Tech-Bilt*, 38 Cal.3d at 499.

Finally, Peters & Freedman objects to the amount of the settlement between plaintiff and AASI because it "fails to include any contribution for [AASI's] portion of plaintiff's attorneys' fees." [Doc. No. 96, at pp. 3, 8.] According to AASI, attorneys'

fees may be the "costliest aspect of this litigation" and may be "multiple factors greater" than the $8,000 settlement between plaintiff and AASI. [Doc. No. 96, at p. 8.] As a result, AASI argues that the settlement would "shift to the remaining defendants the largest source of monetary payment demanded." [Doc. No. 96, at p. 3.] However, Peters & Freedman did not submit any evidence in support of this argument. In addition, Peters & Freedman has not addressed plaintiff's representations that its decision to settle with AASI for $8,000 was based, at least in part, on the probability that AASI could prevail on its Motion for Summary Judgment, and, as a result, plaintiff would not be entitled to recover statutory attorney's fees from AASI and could be liable for AASI's attorney's fees. In sum, AASI has not presented anything from which the Court could conclude the $8,000 settlement amount is "grossly disproportionate" to what a reasonable person would pay to settle the case. *Tech-Bilt*, 38 Cal.3d at 499.

### *Conclusion*

Based on the foregoing, it is this Court's view that the settlement between plaintiff and AASI was made in good faith and that the $8,000 amount of the settlement is not "grossly disproportionate" to what a reasonable person would pay to settle the case based on the information available at the time the settlement was reached. *Tech-Bilt*, 38 Cal.3d at 499. Peters & Freedman, as the opposing party, also did not meet its burden of establishing that the amount of the settlement does not represent AASI's proportional share of liability for the plaintiff's injuries.

It is therefore RECOMMENDED that the District Court issue an order pursuant to California Code of Civil Procedure sections 877 and 877.6: (1) finding the settlement between plaintiff and AASI to be in good faith; (2) dismissing any claims for indemnity, contribution or comparative fault with prejudice; and (3) finding that the non-settling parties are entitled to an offset in the amount of the settlement.

This Report and Recommendation is submitted to the assigned United States District Judge pursuant to Title 28, United States Code, Section 636(b), and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

"Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections. . . ." 28 U.S.C. 636(b)(1). The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: February 8, 2019

Hon. Karen S. Crawford
United States Magistrate Judge