FILED

MAR 21 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT MANIKAN,<br><br>  Plaintiff,<br><br>v.<br><br>PACIFIC RIDGE NEIGHBORHOOD HOMEOWNERS ASSOCIATION, N.N. HAESCHKE, INC., PETERS & FREEDMAN, L.L.P., ADVANCED ATTORNEY SERVICES, INC., AND DOES 1-10,<br><br>  Defendants. | Case No.: 3:17-cv-00467-BEN-JLB<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION**<br><br>**(2) GRANTING JOINT MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT**<br><br>**(3) DENYING AS MOOT ADVANCED ATTORNEY SERVICES MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(4) DENYING MANIKAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(5) GRANTING PETERS AND FREEDMAN'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 58, 80, 81, 83, 112.] |

Presently before the Court is Plaintiff VINCENT MANIKAN ("Manikan"), and Defendants PACIFIC RIDGE NEIGHBORHOOD HOMEOWNERS ASSOCIATION ("Pacific Ridge"), N.N. JAESCHKE, INC. ("Jaeschke"), PETERS & FREEDMAN, L.L.P.

("P&F"), and ADVANCED ATTORNEY SERVICES, INC. ("AASI"), (collectively "Defendants") motions.

## I. FACTS[1]

On July 20, 2012, Manikan, the owner of real property located at 6283 Canyon Bluff Ct., San Diego, CA 92121, filed for Chapter 13 bankruptcy protection (hereinafter "Bankruptcy Case").[2] (Doc. Nos. 22 ¶¶ 23, 24.) Included in his petition was a claim held by Pacific Ridge indicating Manikan was in arrears $3,047.04 for homeowner's association dues. *Id.* ¶ 25. The bankruptcy trustee assigned to Manikan's case prepared a Chapter 13 Plan (hereinafter, the "Plan") reflecting that Pacific Ridge would be repaid its full arrears upon completion of bankruptcy proceedings.[3] *Id.* ¶¶ 26, 27.

On June 20, 2013, N.N. Jaeschke, filed a Proof of Claim in the Bankruptcy Case, as Claim No. 9-1, wherein N.N. Jaeschke as a collection agent for Pacific Ridge represented that the true amount of arrears owed on the date Manikan filed his bankruptcy case was $2,978.24. *Id.* ¶ 25. In a correspondence dated March 17, 2014, N.N. Jaeschke informed the trustee in Manikan's Bankruptcy Case that the arrears had been paid in full and requested no further payment be sent. *Id.* ¶ 26. In response to N.N. Jaeschke's correspondence on behalf of Pacific Ridge, the trustee filed a Notice Intent to Reconsider and Re-Allow Proof of Claim in the bankruptcy case, certifying that N.N. Jaeschke and Pacific Ridge's records reflect the true amount of pre-petition arrears due and owning by Manikan was $2,277.10. *Id.* ¶ 30.

---

[1] Manikan's objections to the evidence are **OVERRULED** to the extent they are inconsistent with this Order.

[2] Manikan filed his Petition under Chapter 13 in the U.S. Bankruptcy Court for the Southern District Court of California, titled *In re Vincent G. Manikan*, with Case No.: 12-10069-LT13. (Doc. No. 22 ¶ 24.)

[3] The Bankruptcy Court confirmed Manikan's Chapter 13 Plan on September 4, 2012, by order of Court. *Id.* ¶¶ 27.

On November 24, 2015, the trustee filed a Notice of Final Cure Payment and Completion of Payments Under the Plan and duly noticed N.N. Jaeschke on behalf of Pacific Ridge that Manikan had repaid all arrears due and owing and the pre-petition arrears balance had been repaid in full. *Id.* ¶¶ 28-31.

On September 2, 2016, while Manikan was current with all his obligations due and owing to Pacific Ridge, Dakotah Douglas ("Douglas"), a contract process server for Defendant AASI, gained entry to Manikan's backyard by forcing the side gate open, allegedly causing significant damage to the gate and its frame.[4] *Id.* ¶¶ 39-40.

Douglas then entered the backyard and "began forcefully banging on the plaintiff's kitchen" window. *Id.* ¶ 42. Manikan's cousin, who was eating breakfast in the kitchen was so terrified by Douglas, she called 911 for police assistance and yelled for Manikan to come to help her. *Id.* Manikan rushed downstairs and witnesses Douglas banging on the kitchen window and yelling something unintelligible. *Id.* Manikan was unable to make out what Douglas was yelling because the double pane windows on Manikan's house muffled Douglas's voice. *Id.* Thinking that Douglas was attempting to break into his house, Manikan alleges he was overcome with terror, fear, and anxiety. *Id.*

When Douglas received no response from Manikan or his cousin, he made his way around the house to another window. *Id.* ¶ 43. This was the bedroom window of Manikan's elderly mother who was recuperating from chemotherapy treatment. *Id.* Douglas pounded on her window, abruptly waking the elderly woman. *Id.* Terrified by the noise outside, she called out for Manikan. *Id.* Upon reaching his mother's room, Manikan again observed Douglas forcefully pounding on his mother's bedroom window and yelling something unintelligible. *Id.* Fearing for his family's safety, Manikan retrieved his firearm and confirmed with his cousin that the police were on their way. *Id.*

---

[4] Dakotah Douglas's forceful pushing open of Manikan's back gate caused significant damage to the gate, posts and window surrounding the gate totaling $1,218.00. (Doc. No. 22. ¶¶ 41-42.)

Hearing the police approaching, Douglas went to the front of the property and awaited their arrival. *Id.* ¶ 44. With the police now on site, Douglas explained that he was a process server and had come to Manikan's house to serve him with a Notice of Default on behalf of Pacific Ridge. *Id.* Douglas was at the front door when Manikan opened it for the police. *Id.*

When Manikan spoke to the officers, he stated that Douglas illegally trespassed on his property and terrorized him and his family. *Id.* ¶ 45. Per his request, the officers agreed to take a police report of the incident.[5] *Id.*

At some point, after the police arrived, Douglas served Manikan with a copy of the Notice of Default ("NOD") from Pacific Ridge.[6]

The NOD specifically stated in caps at the top of the document

> PETERS & FREEDMAN, LLP IS ACTING IN THE FUNCTION OF A DEBT COLLECTOR, ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE
>
> NOTICE OF DEFAULT AND ELECTION TO SELL
> IMPORTANT NOTICE
>
> IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTIONS.

(*Id.* ¶ 47.)

> The NOD further stated:
> You may have the legal right to bring your account in good standing by paying all of your past-due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account…
> This amount is $2,597.04 as of April 2, 2012, and will increase until your account becomes due.

---

[5] Manikan's believes that no formal charges have ever been brought against Defendant's agent. *Id.* ¶ 45.

[6] The NOD had a stamped recordation date of April 9, 2012, cited a balance owed as of April 9, 2012, and stated that it was from Defendant P&F, and was sent on behalf of Defendant Pacific Ridge. *Id.* ¶ 46.

4

*Id.* ¶ 48.

Believing that he was current on his payments to Pacific Ridge, Manikan was confused by and concerned with the NOD that had just been served on him causing him to experience further panic, anxiety, fear, concern, sleeplessness, hopelessness, and despair. *Id.* ¶ 49.

On or about September 6, 2016, Manikan called and explained to P&F representative Macella Herder that he had already repaid all his pre-bankruptcy arrears to Pacific Ridge. After reviewing Manikan's account, Macella stated that P&F's records reflected Manikan still had an HOA arrears balance of $2,597.04, as was indicated on the NOD. *Id.* ¶ 50.

The thought of imminent foreclosure caused Manikan's anxiety and depression to increase exponentially, necessitating a medical doctor to treat Manikan's high blood pressure, allegedly as a direct and proximate result of this incident. *Id.* ¶¶ 51-52.

On February 2, 2017, Manikan commenced this action by filing a two count Complaint in the Superior Court, County of San Diego, California.[7] Following removal on March 7, 2017, (Doc. No. 1), the FAC was filed by Manikan on July 24, 2017, and includes three causes of action.[8] (Doc. No. 22.) Defendants filed Motions to Dismiss (Doc. Nos. 3, 4, 26), which were denied on July 25, 2017, and March 29, 2018. (Doc. Nos. 23, 57.)

On April 2, 2018, AASI filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. (Doc. No. 58.) Manikan filed a Motion for Partial Summary Judgment against P&F on June 25, 2018. (Doc. No. 81.) P&F also filed its Motion for

---

[7] Superior Court Case Number: 37-2017-00004154-CU-NP-CTL.
[8] The FAC includes three causes of action. The first cause of action is alleged against P&F and AASI for violations of the FDCPA. (Doc. No. 22 at 12-15.) The second cause of action is alleged against defendants Pacific Ridge, Jaeschke, and AASI for violations of California's Rosenthal Fair Debt Collection Practices Act ("the RFDCPA"). P&F is not named in this cause of action. *Id.* at 15-17. The third cause of action alleges trespass under California law against defendant AASI only. *Id.* at 17-18.

Summary Judgment, or in the Alternative, Summary Adjudication on June 25, 2018, as well. (Doc. No. 83.)

## II. DISCUSSION

### A. Motion for Determination of Good Faith Settlement

At the May 2, 2018, mandatory settlement conference, with the help of Magistrate Judge Jill Burkhardt, Manikan and AASI reached an arms-length settlement. (Doc. No. 80 at 2.) On the condition that the settlement is determined to have been reached in good faith, AASI will pay $8,000 to settle this action with Manikan in exchange for a dismissal of the action with prejudice. *Id.* Manikan and AASI seek an order from the Court finding the settlement was made in good faith pursuant to section 877 of the California Code of Civil Procedure. *Id.* At the request of Magistrate Judge Jill L. Burkhardt, Magistrate Judge Karen S. Crawford reviewed the Joint Motion and related documents and prepared a Report and Recommendation. *Id.* In her Report and Recommendation, Judge Crawford recommends that the District Court grant the Motion for Determination of Good Faith Settlement.

The Ninth Circuit has recognized that a district court is not required to review de novo a magistrate judge's R&R where no objections have been filed. *See, e.g., United States v. Reyna-Tapia*, 328 F.3d 1114, 1122 (9th Cir. 2003). In this case, no objections to the R&R were filed, and the deadline to do so has now passed.

Accordingly, the R&R, (Doc. No. 112), is **ADOPTED** in its entirety. Any claims for indemnity, contribution or comparative fault with prejudice as to AASI are dismissed. The non-settling party P&F is entitled to an offset in the amount of the settlement ("$8,000.00"). AASI had previously submitted a Motion for Summary or Partial Summary Judgment. Because the settlement is approved, this motion is moot.

### B. Manikan's Motion for Partial Summary Judgment

Manikan moves for Partial Summary Judgment claiming P&F violated the Fair Debt Collection Practices Act ("FDCPA"). Manikan contends P&F violated the FDCPA (§

1692e(2), § 1692f(1), and § 1692f(6)) by attempting to collect HOA assessment not owed, and by further unlawfully threatening to foreclose on Manikan's property.

### C. P & F's Cross-Motion for Summary Judgment

P&F cross-moves for Summary Judgment, claiming under Ninth Circuit jurisprudence, a consumer cannot use a violation of the United States Bankruptcy Code's discharge injunction as a basis to support an FDCPA lawsuit. In other words, since the nature of the debt necessarily entails bankruptcy-laden determinations, relief should be sought in a bankruptcy court. *Id.* Thus, there is no genuine issue of material fact, entitling P&F to judgment as a matter of law. *Id.* As discussed below, P&F is correct.

## II. *DISCUSSION*

### Cross-Motions for Partial Summary Judgment.

Manikan argues that he is entitled to partial summary judgment on the basis that P&F violated the FDCPA. P&F contends that Manikan's motion should be denied because a consumer cannot use a violation of the United States Bankruptcy Code's discharge injunction as a basis to support an FDCPA lawsuit. Moreover, even if a technical violation of the FDCPA did occur, P&F is entitled to application of the FDCPA's bona fide error defense. *Id.*

The Court agrees that FDCPA claims that hinge upon whether the debt at issue was discharged are precluded. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002); *Goad v. MCT Group*, No. 09-cv-1321, 2010 WL 1407257 (S.D. Cal. Apr. 6, 2010) (Moskowitz, J.). Other courts have also found these Bankruptcy-related FDCPA claims to be precluded in district court. For example, in *Wehrheim v. Secrest*, 2002 WL 31242783 (S.D. Ind. Aug. 16, 2002), the court held that the plaintiff's FDCPA claims under 15 U.S.C. § 1692e(10) and 1692(f) were precluded because if the plaintiff were allowed to pursue the claims, the court would have to decide whether the debt on the mortgage note had been discharged in bankruptcy – "This would interject the court into bankruptcy laden question and require reference to the Bankruptcy Code." *Id.* at *8. Similarly, in *Necci v. Universal Fidelity Corp.*, 297 B.R. 376, 381 (E.D.N.Y. Aug. 4, 2003), the court held that the

plaintiff's claims under 15 U.S.C. § 1692e(2)(A), (5), and (10) were precluded because they were premised upon a violation of the bankruptcy stay by post-discharge injunction collection attempts.

Here, the result is no different. Manikan's attempt to state claims under the FDCPA are precluded in the district court because they are premised upon violations of the bankruptcy post-discharge injunction. According to *Walls*, a plaintiff's remedy must be pursued in the U.S. Bankruptcy Court forum. 276 F.3d at 510. Therefore, per *Walls* and Judge Moskowitz' holding in *Goad*, P&F is correct in asserting that Manikan's FDCPA claims, as currently pled, present no cognizable claim for relief in this forum. Manikan's motion for summary judgment is denied. Judgment is granted to P&F on Manikan's FDCPA claims, as Manikan must pursue relief in proceedings before the U.S. Bankruptcy Court.

## III. CONCLUSION

For the foregoing reasons, the Court:

1. **Adopts in full** Magistrate Judge Karen S. Crawford's Report and Recommendation re Motion for Determination of Good Faith Settlement;

2. **GRANTS** Manikan and AASI's Motion for Determination of Good Faith Settlement;

3. **DENIES as moot** AASI's Motion for Summary or Partial Summary Judgment;

4. **DENIES** Manikan's Motion for Partial Summary Judgment;

5. **GRANTS** P&F's Motion for Summary Judgment.

The Final Pretrial Conference scheduled for Monday, March 25, 2019, at 10:30 am is **vacated and reset to April 22, 2019, at 10:30 am.**

**IT IS SO ORDERED.**

DATED: March 21, 2019

HON. ROGER T. BENITEZ
United States District Court Judge